ELIZABETH R. CHATHAM, PETITIONER-RESPONDENT, v. PUBLIC SERVICE ELECTRIC AND GAS COMPANY, RESPONDENT-PROSECUTOR.

Argued May 6, 1948—Decided September 9, 1948.

Before CASE, CHIEF JUSTICE, and Justices BURLING and JACOBS.

For the petitioner-respondent, *Gilhooly & Yauch* (*Edward J. Gilhooly,* of counsel).

For the respondent-prosecutor, *Carl T. Freggens* (*Henry J. Sorenson,* of counsel).

The opinion of the court was delivered by

JACOBS, J.    This matter is before the court on writ of *certiorari* to review the judgment of the Essex County Court of Common Pleas affirming an award rendered by the Workmen's Compensation Bureau in favor of the petitioner-respondent.

Petitioner duly filed her claim for compensation for her husband's death which she alleged was the result of an acci-

dent arising out of and in the course of his employment by respondent-prosecutor. Her husband, the decedent Clyde L. Chatham, had been employed by the respondent, Public Service Electric and Gas Company, as assistant division superintendent, in its Paterson office. His duties included attendance at labor-management meetings which were held in the company's conference room on the twelfth floor of the Public Service Building, Park Place, Newark.

On the morning of June 7th, 1945, the decedent telephoned his assistant Mr. Thimme that he would take care of the labor-management meeting which was scheduled for 10:00 A. M. at the conference room in Newark. After discussing vacation plans with his wife, he left his home in Nutley about 9:20 A. M., proceeded to Newark and parked his car in the Public Service garage on the east side of Pine Street, Newark, where he bid a cheerful good morning to Mr. Finn, chauffeur for the company's president. Within five minutes thereafter, his body plunged from the Public Service Building to the ground on the west side of Pine Street. One witness saw the shadow of his body as it passed the seventh floor of the building and another saw his body, which had been preceded by his brief case, after it struck the ground.

Shortly thereafter, detectives of the Newark police department arrived to ascertain the cause of the decedent's death. Their investigation indicated that his body had come from an open window in the twelfth floor conference room, which was thereupon thoroughly inspected. All of the windows were closed except the open center window. The venetian blind on the center window had been raised two or two and one-half feet from the sill. There were no fingerprints or footprints on the sill or outer ledge. However, there was dust on the sill except about the width of a man, "as though the clothes had brushed away whatever little dust or stuff had fallen on that window sill since it was cleaned." Describing these brush marks, Detective Donald said: "This was a slide, to take the dust off and clean it." Detective Bontempo who tested the window found that it worked stiffly at the start but easily "after getting a good start on it." All of the windows and the door of the conference room had been closed the

previous night and the door had been opened by a company employee at an early hour on June 7th.

The decedent had a happy home life, had no financial worries, and had been advised two days before his death of his promotion to the position of division superintendent. He had long been a sufferer of bursitis of the left leg which, in the language of his assistant, had left him discouraged but not despondent. On one occasion, he had taken an overdose of barbiturates which he had been using under medical prescription. The fact that the barbiturates were permitted to remain freely available to him by his family and physician tends to negate the inference that the overdose was intentional.

In the Workmen's Compensation Bureau the deputy commissioner, in a detailed determination of the facts, stated that his consideration of the testimony and his personal inspection of the premises, with the consent of the parties, had led him to the conclusion that "the decedent accidentally fell from the building and that said accident arose out of and in the course of his employment." On appeal, the Court of Common Pleas affirmed the judgment entered in the Bureau upon the finding that the petitioner had established that the decedent's death resulted from such accident. Although the factual issue is now, on writ of *certiorari,* before us for determination, the parties recognize that the findings below will not be lightly disturbed. See *Mong.* v. *Samuel Dolinsky & Co.* (*Supreme Court,* 1938), 119 *N. J. L.* 547, 548, where the court dismissed the writ saying:

"However, this may be, the fact remains that two successive tribunals have concurred in the award now before us, and under the well settled rule in such cases, while this court has full jurisdiction to review in matters of fact, those concurring decisions should not be lightly disturbed. *Mountain Ice Co.* v. *Durkin,* 6 *N. J. Mis. R.* 1111; 105 *N. J. L.* 636."

See, also, *Schmidt* v. *Atlantic Refining Co.* (*Supreme Court,* 1944), 132 *N. J. L.* 196, 197; affirmed (*Court of Errors and Appeals,* 1945), 133 *Id.* 39; *DeSantis* v. *Turner Construction Co.* (*Supreme Court,* 1938), 120 *Id.* 590, 591.

In attacking the findings below, prosecutor first cites *Kirschbaum* v. *Metropolitan Life Insurance Co.* (*Court of*

*Errors and Appeals,* 1945), 133 *N. J. L.* 5, where the court held that the presumption against suicide is not evidence for a jury's consideration but is solely for the "use of the trial court in determining whether a *prima facie* case has been established" so as to compel the production of contrary evidence. Neither of the lower tribunals, in anywise, departed from this holding. The Court of Common Pleas made no reference to the presumption and, although the deputy commissioner in the Bureau expressed the opinion that the presumption had not been met, he proceeded to make an independent finding that "the credible proofs lead me to the conclusion that the decedent did not take his own life."

Prosecutor next attacks the remark made by the Court of Common Pleas, in the course of its opinion, that suicide was "out of the case." This remark was directly induced by prosecutor's counsel's own argument, as witness the court's statement that:

"No defense of suicide or self-destruction was made by the respondent and in the argument before this court counsel for respondent expressly stated that respondent was not interposing any defense of suicide."

Presumably, what court and counsel meant was that suicide, as such, was not being asserted; or in the case, as an affirmative defense to be established by the respondent (see *R. S.* 34:15–7), although the petitioner still had to establish that the decedent's death resulted from an accident as distinguished from a self-inflicted injury. In any event, the Court of Common Pleas properly made an independent finding of fact that the petitioner had sustained "the burden of proving that the decedent met his death as the result of an accident arising out of and in the course of his employment with the respondent."

Our examination of the record leads us to the conclusion that the factual determination of the two lower tribunals should not be rejected. The surrounding circumstances, including the falling of the brief case, the absence of any fingerprints or footprints on the sill or outer ledge notwithstanding that the physical layout, which the deputy commissioner had the benefit of viewing, indicated that a jump would probably

have involved standing thereon, and the appearance of the dust on the ledge indicating that a "slide" had taken place, tend to support petitioner's claim of accidental death. The evidence with respect to the decedent's recent promotion and his general behavior and demeanor on the morning of his death, lends further support. In all, we are satisfied, that the facts presented in the record established that the death was the result of an accident arising out of and in the course of the decedent's employment and was, therefore, compensable.

The judgment of the Court of Common Pleas is affirmed.